UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.    24 CR 186 |
| v. | ) | |
| | ) | Judge Lindsay C. Jenkins |
| JAMARI EDWARDS | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Within one week in August 2022, defendant carjacked three victims at gunpoint. As one of the victims walked away from the carjacking, defendant asked the victim why he wasn't scared of him, and shot the victim in the leg. For this serious crime spree, a guideline sentence of 293 months is sufficient, but not greater than necessary, to serve the purposes of sentencing.

## I.    Background

On April 11, 2024, defendant Jamari Edwards was indicted with three counts of carjacking (Counts 1, 3, and 5); one count of discharging a firearm during and in relation to a crime of violence (Count 2); and two counts of brandishing a firearm during and in relation to a crime of violence (Counts 4 and 6). R. 1. On April 17, 2025, defendant entered a plea of guilty pursuant to a plea agreement to Counts 1, 2, 3, 4, and 5 of the indictment. R. 35. Sentencing is set for September 4, 2025 at 10:30 a.m. R. 40.

## II.    Offense Conduct

From August 6, 2022 to August 13, 2022, defendant carjacked three victims at gunpoint, shooting one of the victims. Specifically, on August 6, 2022, defendant

carjacked Victim A in a Dunkin' Donuts drive thru. PSR ¶ 10. Defendant got into Victim A's vehicle on the passenger side, pointed a firearm at the victim, and forced him out of his car. *Id.* When Victim A began to walk away, defendant asked Victim A why he was not scared of defendant, and proceeded to shoot Victim A in the leg. *Id.* After defendant shot Victim A, he began to pull away in Victim A's car. *Id.* Victim A tried to call 911, but his phone was still connected to the Bluetooth in his car. *Id.* Defendant stopped the car, got out, and ran toward Victim A holding the gun. *Id.* The defendant put the gun against Victim A's head or back as he frisked Victim A, and defendant took Victim A's phone and wallet. *Id.* Victim A had to walk to a nearby gas station for help, and was transported to the hospital via ambulance. *Id.*

Just two days later, on August 8, 2022, defendant carjacked Victim B at a gas station. PSR ¶ 11. Victim B parked his car in front of the convenience store at the gas station and went inside. *Id.* As Victim B came back outside, defendant ran toward Victim B pointing a gun. *Id.* The defendant placed the gun on Victim B's back and frisked him, stealing his wallet and phone. *Id.* When defendant could not find the car keys, he pulled Victim B by his shirt toward the car to look for the keys. *Id.* Defendant found Victim B's keys on the ground, and drove off with Victim B's car. *Id.*

A few days after that, defendant carjacked Victim C at the same gas station. PSR ¶ 12. Victim C also parked in front of the same gas station convenience store as Victim B. *Id.* Victim C remained in the driver's seat while her friend went into the store. *Id.* While Victim C was in the driver's seat, defendant and an unknown co-conspirator approached her car, with the defendant on the driver's side and the co-

conspirator on the passenger's side. *Id.* The defendant pointed a gun at Victim C's head. *Id.* Victim C pushed the gun away, but defendant pointed it back at Victim C's head and said, "get out of the fucking car before I blow your brains out." *Id.* The defendant yelled at her to get out of the car, but she refused, so defendant pulled Victim C out of the car by her necklace. *Id.* Defendant stole Victim C's necklace, which broke when he pulled her by it, purse, wallet, and phone, and drove away in her car. *Id.*

### III. Offense Calculation and Guidelines Range

A.   <u>PSR Calculation of Offense Level</u>

The government agrees with the PSR calculation of the total offense level as 28. PSR ¶¶ 19-52.

B.   <u>Criminal History</u>

The government agrees with the PSR determination that defendant's criminal history score is zeo and his criminal history category is I. PSR ¶ 59.

C.   <u>Advisory Guidelines Range</u>

With an offense level of 28 and a criminal history category of I, defendant's advisory guidelines range is 78 to 97 months. PSR ¶ 110. Defendant is also subject to a mandatory minimum sentence of ten years on Count 2 and seven years on Count 4, to be imposed consecutively to any other counts and to each other. PSR ¶ 109.

### IV. The §3553(a) Factors Support Imposition of a Guideline Sentence of 293 Months in Prison

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. Those

purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(A)-(D). In order to determine the sentence to impose, the court must consider the statutory factors listed in §3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements. §3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). For the reasons set forth below, the statutory sentencing factors reflect that a guideline sentence of 293 months (89 months on Counts 1, 3, and 5, followed by 120 months on Count 2, and 84 months on Count 4) is warranted.

A.  <u>Seriousness, Nature, and Circumstances of Offense</u>

The nature and circumstances of the offense are extremely serious. Over the course of only one week, defendant carjacked three victims at gunpoint. The victims were living their normal lives, driving thru Dunkin' Donuts for coffee and stopping at a gas station for snacks and gas. Defendant interrupted those normal lives with a gun and the lasting impact of his violent actions. Defendant threatened all three victims with a firearm. Defendant told Victim C if she did not comply with his

4

demands that he would blow her brains out. Defendant shot Victim A when he thought Victim A wasn't scared of him. To add insult to injury, defendant then stole Victim A's phone, preventing him from receiving quick medical aid. Victim A tried to get help at the Dunkin' Donuts, but they refused to call 911. Victim A limped to the nearby gas station and tried to have one of the customers at the pump call 911, but they also refused. Finally, an employee of the gas station helped Victim A and called for an ambulance. Defendant escalated an already serious situation with his brazen conduct by shooting Victim A and delaying his medical aid. A significant sentence is warranted to protect the public from defendant's criminal appetite and deter defendant from committing future violent acts.

B.    History and Characteristics of Defendant

Defendant was 20 at the time he committed these offenses. He has several prior arrests, many involving firearms. PSR ¶¶ 65, 66, 68, 69. One of those gun arrests resulted in an adjudication. *See* PSR ¶ 68.[1] Defendant reports that he was raised by a single mother. ¶ 76. He shared a home with many siblings, cousins, and nieces and nephews. PSR ¶¶ 76, 78, 83. There were times when the family did not have enough money to pay bills, and the gas, water, or electricity was turned off at the home, but this did not happen often. PSR ¶ 77. Defendant reported no mental or physical health issues, but some substance abuse. PSR ¶¶ 88, 89, 94, 97. Prior to being incarcerated for this offense, defendant had almost no consistent employment history. PSR ¶¶ 102-104. These factors are both aggravating and mitigating. But the

---

1 The government provided disposition records to Probation after the PSR was issued, and previously produced to defense counsel in discovery.

mitigating factors here do not excuse or lessen the havoc defendant wrecked, and the lasting impact defendant left on the victims.

        C.      <u>The Need to Afford Adequate Deterrence</u>

"[I]f a defendant has been convicted for the same offense more than once, he has demonstrated the need for greater sanctions to deter him from committing the same crime again-greater sanctions than might be required for a defendant who has never been convicted of a similar offense." *United States v. Schmude*, 901 F.2d 555, 559 (7th Cir. 1990). While defendant has not previously been convicted of a carjacking, he has been convicted of a prior offense involving a firearm. And here, he repeatedly carjacked victims at gunpoint, showing no regard to human life. A significant sentence is warranted to deter this defendant from committing future violent crimes.

In addition to specifically deterring this defendant's future criminal conduct, the sentence imposed should have general deterrent effects. *See* 18 U.S.C. § 3553(a)(2)(B); *United States v. Warner*, 792 F.3d 847, 860 (7th Cir. 2015) (noting general deterrence to criminal conduct is an important sentencing goal); *United States v. Mendoza*, 576 F.3d 711, 722 (7th Cir. 2009) (noting that general deterrence is a factor to consider). As this Court is well aware, gun violence continues to plague the city of Chicago. In order to deter others who might engage in similar conduct, this Court's sentence should reflect the seriousness of this offense.

## V.    Conditions of Supervised Release

The PSR recommends the following mandatory conditions, as numbered in the

PSR: (1) not commit another Federal, State, or local crime; (2) not unlawfully possess a controlled substance; (5) cooperate in the collection of a DNA sample if required by law; and (6) refrain from unlawful use of a controlled substance and submit to drug testing during supervised release. The government agrees with the imposition of these mandatory conditions, and given that these conditions are mandated by statute, the Court need not give any reason or explanation for the imposition of these mandatory conditions. *United States v. Bryant*, 754 F.3d 443, 445 (7th Cir. 2014).

In addition to the mandatory conditions, the Court has discretion to impose additional conditions of supervised release or probation (1) that are "reasonably related" to the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D); (2) that "involve[] no greater deprivation of liberty than is reasonably necessary" to meet the goals of 18 U.S.C. §§ 3553 (a)(2)(B), (a)(2)(C), and (a)(2)(D); and (3) that are "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d); *United States v. Shannon*, 743 F.3d 496, 500 (7th Cir. 2014). Section 3583(d) points to the discretionary conditions set forth in § 3563(b).

Discretionary Conditions 4, 6, 7, 8, and 9, as numbered in the PSR, support defendant's rehabilitation and would ensure that he is engaged in lawful pursuits instead of criminal activity. As for Discretionary Condition 4, requiring defendant to work will help defendant build a history of stable employment and discourage him from turning to crime. Discretionary Condition 6, which prevents defendant from meeting or communicating with Victims A, B, and C, will further his rehabilitation

and protect the victims of this offense. Discretionary Condition 7, which prohibits defendant from excessive use of alcohol (defined as a BAC above .08%), is appropriate given defendant's substance abuse issues. *Id.* at ¶¶ 94, 97. Similarly, Discretionary Condition 9 requires substance abuse treatment. *Id.*

Discretionary Conditions 14 through 18 and 24, as numbered in the PSR, facilitate effective and efficient supervision of defendant by the Probation Office, and without these conditions, the Probation Office would be severely hampered in assisting defendant to succeed. For example, requiring defendant to remain within the district (Discretionary Condition 14) and report to his probation officer (Discretionary Condition 15) will assist the probation officer in supervising defendant effectively and efficiently. Discretionary Condition 16 allows the probation officer to visit defendant's home, work, school, a community service location or other reasonable location at any reasonable time to ensure defendant's compliance with his release conditions. Moreover, requiring defendant notify a probation officer within 72 hours of any change in residence, employer, or workplace (Discretionary Condition 17) or any arrest, criminal charge, or law enforcement questioning (Discretionary Condition 18) allows for necessary probation officer supervision and support of defendant. Allowing a probation officer to, with reasonable suspicion, search defendant's person, residence, vehicle, and other property (Discretionary Condition 24) supports effective supervision and ensures compliance with defendant's conditions.

Pursuant to 18 U.S.C. § 3563(b)(22), which allows for "other conditions as the

court may impose," the Probation Office recommended special conditions 3, 5, 6, 7, 8, 10, and 11, which the government agrees are appropriate here. First, the Probation Office recommended defendant, if unemployed after the first 60 days of supervision or if unemployed for 60 days after employment ends, must perform at least 20 community service hours each week at the direction of Probation until gainfully employed, with the total community service hours not to exceed 500 hours (Special Condition 3). This condition supports defendant's reintegration to lawful society should he be unable to obtain employment despite the training and support provided through supervised release. Second, the Probation Office recommended a series of financial health conditions that will ensure defendant pays his restitution obligation (Conditions 5, 6, 7, 8, and 10). Third, the Probation Office recommended that defendant "not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court." (Special Condition 11). As the Seventh Circuit has noted, a defendant acting as a confidential informant on supervised release is "generally inconsistent" with the rehabilitative and reintegration efforts of the Sentencing Guidelines because it keeps a defendant in the underground world of criminality at a time when that person is trying to change his/her life. *See United States v. Kappes*, 782 F.3d 828, 851 (7th Cir. 2015) (finding that the district court's lack of findings to support this condition was harmless because "acting as a confidential informant is generally inconsistent with the rehabilitative and re-integrative goals of supervision"). Finally, the Probation Office recommended defendant observe one Reentry Court session (Special Condition 14).

9

Given defendant's lack of employment history and substance abuse issues, observing other's success and the resources available through Reentry Court further support his rehabilitation.

## VI.     Conclusion

In view of the section 3553(a) factors, a sentence of 293 months is fair, reasonable, and sufficient, but not greater than necessary to reflect the seriousness of the offense and promote respect for the law. For these reasons, the government respectfully requests that this Court impose sentence of 293 months.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:      */s/ Margaret A. Steindorf*
         Margaret A. Steindorf
         Assistant U.S. Attorney
         219 South Dearborn Street, 5th Floor
         Chicago, Illinois 60604

Dated: August 14, 2025